IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-655

No. COA21-184

Filed 7 December 2021

Iredell County, No. 10-JB-203

IN THE MATTER OF:  Z.P.

Appeal by Juvenile from orders entered 30 July 2020 and 27 August 2020 by Judge Carole Hicks in Iredell County District Court.  Heard in the Court of Appeals 22 September 2021.

*Attorney General Joshua H. Stein, by Deputy General Counsel Tiffany Lucas, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for the Juvenile-Appellant.*

DILLON, Judge.

¶ 1        Z.P. ("Sophie")[1] appeals from the trial court's 30 July 2020 order adjudicating her delinquent ("Adjudication Order") and the 27 August 2020 order sentencing her to a Level 1 Disposition ("Disposition Order").

## I. Background

¶ 2        This matter involves two petitions filed against Sophie for statements she

---

[1] Pseudonyms are used to protect the identity of the juveniles in this case.  *See* N.C. R. App. P. 42(b)(1).

made in September 2019 at her school to fellow students when she was eleven years old.

¶ 3    One petition alleged a felony, specifically that she communicated a threat of mass violence on educational property by stating that she was going to blow up her school.   The other petition alleged a misdemeanor, specifically that she communicated a threat of physical violence towards another student, Cameron.

¶ 4    The trial court adjudicated Sophie delinquent, finding that she committed both offenses and imposed a Level One disposition.  Sophie appealed to our Court, essentially contending that the State failed to present sufficient evidence to prove the allegations contained in either petition.

## II. Preservation of Arguments

¶ 5    The State contends that Sophie's counsel did not preserve her arguments regarding the sufficiency of the State's evidence.

¶ 6    Sophie argues that our Court should address her sufficiency arguments (1) by considering N.C. Gen. Stat. § 7B-2405(6) (2019) a statutory mandate or (2) by invoking Rule 2 of our Rules of Appellate Procedure.  Section 7B-2405(6) states that "[i]n [an] adjudicatory hearing, the court shall protect [a juvenile's rights, including a]ll rights afforded adult offenders except the right to bail, the right of self-representation, and the right of trial by jury."  We conclude that Section 7B-2405(6) does not preserve Sophie's argument on appeal.  Notwithstanding, we exercise our

discretion to invoke Rule 2 of our Rules of Appellate Procedure to review Sophie's arguments. In doing so, we note that the State was not prejudiced by the failure of Sophie's counsel to formally move to dismiss at the close of all the evidence and that it is obvious from the transcript that Sophie's defense rested largely on the insufficiency of the State's evidence.

### III. Analysis

At the juvenile hearing, the State called as witnesses four of Sophie's classmates who heard one or more of Sophie's statements. The State also called the assistant principal and resource officer, both of whom investigated the matter. On appeal, Sophie argues that the State failed to present sufficient evidence to support the allegations in each of the two petitions. As in other types of cases, our Supreme Court has held that in a case where a petition is filed alleging that a juvenile has committed a criminal act, the standard of review is as follows:

> This Court reviews de novo a trial court's denial of a motion to dismiss for insufficiency of the evidence to determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.
>
> Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion.
>
> All evidence is viewed in the light most favorable to the State and the State receives the benefit of every reasonable inference supported by that evidence.

*In re J.D.*, 376 N.C. 148, 155, 852 S.E.2d 36, 42 (2020) (internal citations and quotation marks omitted).  We address Sophie's sufficiency argument separately as to each petition.

### A. Threat of Mass Violence to Educational Property

¶ 8      The State filed a juvenile petition alleging that Sophie violated Section 14-277.6 of our General Statutes by "willfully and feloniously [ ] threaten[ing] to commit an act of mass violence on an educational property by stating that she was going to blow up the school [in the presence of four of her classmates.]"  As set forth below, the evidence is uncontradicted that Sophie did make a statement to the effect that she was going to blow up the school.  However, Sophie argues that there was insufficient evidence that her threat was a "true threat," something that must be proven under Section 14-277.6.

¶ 9      The United States Supreme Court has concluded that an anti-threat statute requires the government to prove a "true threat."  *Watts v. United States*, 394 U.S. 705, 708 (1969).  That Court has explained that a true threat, for purposes of *criminal* liability, depends on *both* how a reasonable hearer would objectively construe the statement *and* how the perpetrator subjectively intended her statement to be construed.  *Elonis v. United States*, 575 U.S. 723, 737-38 (2015).

¶ 10     However, there seems to be a split in cases construing criminal anti-threat

statutes concerning exactly what the State must prove regarding the perpetrator's subjective intent to be. For instance, in an unpublished 2012 case, we held that, to satisfy the subjective intent prong, the State must merely prove that the perpetrator subjectively intended to communicate a statement to a hearer, irrespective of whether the perpetrator intended the communication to be construed as a threat:

> Defendant's testimony showed that he knew about the history of the WANTED posters and was aware that they could be "threatening." While defendant testified that he did not intend to make [the victim] fearful, his testimony showed that by handing out the posters, defendant intended to communicate with [the victim] and that communication caused [the victim] to fear for his own safety. Therefore, the WANTED posters distributed by defendant fall under the definition of a true threat, an unprotected category of speech.

*State v. Benham*, 222 N.C. App. 635, 731 S.E.2d 275, 2012 N.C. App. LEXIS 979, *27 (2012) (unpublished) (construing a misdemeanor stalking statute).

More recently, though, in a case that is currently pending at our Supreme Court, we held that the State must show that the perpetrator's "subjective intent [was] to threaten a person or group of persons by communicating the alleged threat." *State v. Taylor*, 270 N.C. App. 514, 561, 841 S.E.2d 776, 816 (2019).

In any event, we need not decide in this case whether the State's burden here was to show Sophie subjectively intended to make a threat, or merely that she subjectively intended to make a statement that constituted what others thought was

a threat.

¶ 13    For the reasoning below, we conclude that the State's evidence failed the objective portion of the "true threat" test.  In other words, the State did not meet its burden of showing that an objectively reasonable hearer would have construed Sophie's statement about bombing the school as a true threat.

¶ 14    The State's evidence essentially showed as follows:

¶ 15    Three of Sophie's classmates (Madison, Tyler, and Caleb) each testified to hearing Sophie threaten to blow up the school, though none of them testified that they thought she was serious when she made the threat.

¶ 16    Madison testified that Sophie talked about bombing the school.  Madison testified that she did not think Sophie was serious when making the statement, and Madison did not report the threat to any adult.

¶ 17    Tyler testified that Sophie "said something about a bomb" and said "she was going to blow up the school."  Tyler offered in a joking manner to help her build the bomb and stated that he "thought it was just a joke."

¶ 18    Caleb also heard Sophie's threat about blowing up the school but was equivocal about his perception of Sophie's seriousness, stating that her statement was "either [ ] a joke or it could be serious."

¶ 19    The State's evidence may create a *suspicion* that it would be objectively reasonable for Sophie's classmates to think Sophie was serious in making her threat.

But we do not believe that the evidence is enough to create an *inference* to satisfy the State's burden. Indeed, none of Sophie's classmates who heard her statement believed that Sophie was serious, with most of them convinced that she was joking. She had made outlandish threats before, never carrying out any of them. *See Watts*, 394 U.S. at 707-08 (stating that the "context" in which the alleged threat was made must be considered); *see also Taylor*, 270 N.C. App. at 562, 841 S.E.2d at 816-17 (holding that the context in which the statement is made must be considered to evaluate whether the hearers would think the statement was a "serious expression of an intent to kill or injure [others]").

¶ 20 We note that there was evidence that Sophie told her fellow students that there may be a school shooting and that they could protect themselves from the shooter if they wore a certain color. However, the State's petition only makes allegations about a threat to "blow up" the school, and we only evaluate the sufficiency of the evidence as to that allegation.

¶ 21 Accordingly, we reverse the trial court's judgment with respect to this petition.

B. Communicating a Threat to Harm a Fellow Student

¶ 22 In the other petition, the State alleged that Sophie "unlawfully and willfully threaten[ed] to physically injure the person or damage the property of [Cameron]" by stating that "she was going to kill him with a crowbar and bury him in a shallow grave." Again, there is overwhelming evidence that Sophie made this statement.

¶ 23    The State alleged that Sophie violated Section 14-277.1 of our General Statutes which states that a person is guilty of a misdemeanor if:

1.  She "willfully threatens to physically injure" another;

2.  She communicates the threat orally to the other person;

3.  A reasonable hearer would "believe that the threat is likely to be carried out;" and

4.  The hearer actually believes that the threat will be carried out.

N.C. Gen. Stat. § 14-277.1(a) (2019).

¶ 24    Here, the State's evidence showed that Sophie told another student that she was going to physically injure Cameron when Cameron was in earshot. Specifically, the State's evidence was as follows:

¶ 25    Cameron testified that Sophie had physically threatened him previously; that he heard Sophie make the statement that she was going to hit him with a crowbar; and that Sophie is larger and stronger than he is. Cameron did testify that Sophie may have been joking but also that he believed that Sophie could hit him with a crowbar. He also testified that he was scared of Sophie because of her past threats.

¶ 26    Madison testified that she heard Sophie threaten to hit Cameron with a crowbar and bury him in a shallow grave.

¶ 27    The assistant principal testified that Cameron seemed very fearful of Sophie and that Sophie admitted to not liking Cameron and wishing he were dead.

The trial court found that Sophie made the statement "in a manner that was intended for [Cameron] to hear it" and that Cameron believed Sophie could carry out the threat regarding the crowbar.

We conclude the evidence, in the light most favorable to the State, was sufficient to sustain the trial court's finding that Sophie violated Section 14-277.1. Taken in this light, Cameron took her threat about hitting him with a crowbar and burying him in a shallow grave seriously. Further, it would be reasonable for a person in his position to take the threat seriously, in that Cameron is a person who is smaller in stature than Sophie and had been physically threatened by her on other occasions.

We, therefore, affirm the trial court's judgment regarding the petition alleging a violation of Section 14-277.1.

## IV. Conclusion

Regarding the Adjudication Order, we affirm as to the finding that Sophie violated Section 14-277.1 (communicating a threat). However, we reverse as to the finding that Sophie violated Section 14-277.6 (communicating a threat of mass violence on educational property).

Accordingly, we vacate the trial court's Disposition Order and remand to allow the trial court to reconsider the disposition in light of our reversal of its finding that Sophie violated Section 14-277.6. On remand, the trial court may enter a disposition

up to a Level 1, as it previously did.

AFFIRMED IN PART; REVERSED IN PART; VACATED AND REMANDED

IN PART.

Judges COLLINS and WOOD concur.